# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ROBERT J. CANGELOSI, JR.** | * | **CIVIL ACTION NO. 2012-cv-___** |
| **versus** | * | **SECTION: "____"** |
| **NEW ORLEANS HURRICANE** | * | **MAG. ____** |
| **SHUTTERS AND WINDOWS, L.L.C.** | * | |

## COMPLAINT FOR DAMAGES, BREACH OF CONTRACT
## AND
## <u>VIOLATION OF FAIR DEBT COLLECTIONS PRACTICES ACT</u>

Robert J. Cangelosi, Jr. ("Mr. Cangelosi" or "Complainant"), respectfully represents as follows:

### I.

Complainant is a major and resident of the Parish of Orleans, State of Louisiana.

### II.

Made defendant herein is New Orleans Hurricane Shutter and Window, L.L.C. ("New Orleans Hurricane"), a Louisiana limited liability company with its principal place of business in New Orleans, Louisiana.

### III.

Mr. Cangelosi is one of the premier historic architects in New Orleans: Mr. Cangelosi supervised the restoration of the Cabildo following its 1989 fire. On February 14, 2011, Mr. Cangelosi entered into a Sales Agreement with New Orleans Hurricane Shutters and Windows, LLC ("New Orleans Hurricane"), to install shutters on his residence located at 4526 South

Carrollton Avenue in New Orleans.  The Sales Agreement was funded by money Mr. Cangelosi received from the Federal Emergency Management Agency ("FEMA") Hazard Mitigation Grant Program.[1]  Mr. Cangelosi tendered $3750.00 in advance for the fabrication and installation of the shutters.

### IV.

When New Orleans Hurricane installed the shutters, they failed to fit the openings and lacked any mechanism by which they could readily be secured.  Thus, the shutters as fabricated and installed do not provide protection from high winds as contemplated by the FEMA Hazard Mitigation Grant Program.  On April 18, 2011, the date that New Orleans Hurricane installed the shutters, Mr. Cangelosi telephoned New Orleans Hurricane and spoke with an employee, Robin L/N/U, complaining about the shutters' fabrication and installation.  Mr. Cangelosi, as an A.I.A. certified architect, advised New Orleans Hurricane of alternate mechanisms that would permit the shutters to operate properly.

### V.

Mr. Cangelosi made numerous telephone calls to New Orleans Hurricane reiterating the problems (of which New Orleans Hurricane was aware) with the shutters and seeking assistance from its personnel to rectify the problems with their design and installation.  When Mr. Cangelosi received no response to his April 18, 2011 call to New Orleans Hurricane, he telephoned again and on April 20, 2011, he spoke with Belinda L/N/U.  Mr. Cangelosi reiterated

---

[1]   New Orleans Hurricane has a website that advertises "Get a $7,500 grant to storm proof your home with Hurricane Shutters from New Orleans Hurricane Shutters and Windows, LLC today!"

his complaints.  Having received no satisfactory response to his April 18 and April 20 telephone calls, Mr. Cangelosi on May 24, 2011, again telephoned New Orleans Hurricane.  Once again, Mr. Cangelosi received no satisfactory response.  Because of his dissatisfaction with the shutters, Mr. Cangelosi withheld payment.

## VI.

On or about August 4, 2011, Mr. Cangelosi received a demand letter from Lena R. Hinton, attorney for New Orleans Hurricane.  More specifically, the letter sent by Ms. Hinton threatened Mr. Cangelosi as follows:

> This letter is *official notice* that you have breached a contractual agreement with New Orleans Shutters and Windows, LLC (NOHSW).  On February 14, 2011, you signed a contract to purchase hurricane shutters for your home in the amount of $7500.00.  Specifically, the contract stated that you wanted to purchase the shutters from NOHSW using Federal [sic] funds provided by the FEMA Hazard Mitigation Grant Program.  In Addition [sic], *you signed several notarized documents including an affidavit, a sworn statement,* that you would utilize the federal grant money only for the purchase of shutters.  The intended and specific purpose of the federal money is to mitigate hurricane damage to the grant recipient's home.  As the contract states, you were required to pay one-half of the total before installation began and the balance after the work was completed.  NOHSW's records indicate that you made an initial payment of $3700.00 on February 15, 2011.  On April 18, 2011, shutters were installed on you property at 4526 S. Carrollton Avenue.  To date, you have not made a payment on the balance owed of $3800.00.  *Besides liability for breaching a contact with NOHSW, you may also be subject to federal criminal charges for misappropriating Federal Grant funds for personal use.*
>
> *Accordingly, we demand that you immediately remit payment to New Orleans Hurricane Shutters and Windows, LLC in the amount of $3800.00.  If you do not respond in 10 business days, we will be forced to place a line on your property and file suit against you, including filing a federal criminal complaint suggesting your prosecution.  In addition, we will file a Disaster Fraud claim with the Department of Homeland Security, Office of the Inspector General, reporting that you have used Federal Disaster Relief Funds for personal use.*  We reserve

>all legal rights hereunder and absent any written response from you, we will proceed with legal action without any further notice.

Letter dated August 2, 2011 by Lena R. Hinton, attorney for New Orleans Hurricane, to Robert Cangelosi. (Emphasis supplied.). After receiving Ms. Hinton's letter, Mr. Cangelosi made his final call to New Orleans Hurricane on August 4, 2011, when he spoke to an employee named Lisa L/N/U. Lisa advised Mr. Cangelosi that New Orleans Hurricane refused to remedy the problems with the fabrication and installation of the shutters. Under the premises, Mr. Cangelosi avers that New Orleans Hurricane converted the monies paid to them by Mr. Cangelosi pursuant to the FEMA grant program.

## COUNT I
## NEW ORLEANS HURRICANE ACCUSED MR. CANGELOSI OF A CRIME WHICH IS DEFAMATORY PER SE

### VII.

By accusing Mr. Cangelosi of committing a crime or crimes, New Orleans Hurricane through its agents Ms. Hinton has defamed Mr. Cangelosi. Mr. Cangelosi has suffered pain, mental anguish, humiliation and loss of enjoyment of life as a result of the actions taken by New Orleans Hurricane and its agent, Ms. Hinton.

## COUNT II
## REFUND OF FUNDS CONVERTED BY NEW ORLEANS HURRICANE

### VIII.

Because Mr. Cangelosi's attempts to rectify the problems with the shutters were unavailing, Mr. Cangelosi determined that in order to satisfy his needs and the requirements of the FEMA grant program he would be required to have the shutters removed and new shutters

fabricated and installed by another company. Thus, Mr. Cangelosi seeks a full refund of the $7500.00 he has paid to New Orleans Hurricane plus interest from the date of payment until paid. Mr. Cangelosi alternatively avers that New Orleans Hurricane has converted the funds he paid to New Orleans Hurricane.

## COUNT III
## EXTORTIVE THREATS AND VIOLATION OF
## FAIR COLLECTIONS PRACTICES ACT

### IX.

The Sales Agreement submitted to Mr. Cangelosi by New Orleans Hurricane provided for a total job of $7500.00 of which Mr. Cangelosi paid $3750.00 in advance by check no. 5376 drawn on Mr. Cangelosi's personal account. Thus, upon satisfactory completion of this job, Mr. Cangelosi would only have owed an additional $3750.00. However, New Orleans Hurricane attempted to collect $3800.00 from Mr. Cangelosi, $50.00 more than what was owed. In so doing, New Orleans Hurricane violated the Fair Debt Collections Practices Act by attempting to collect more than the debt owed.

### X.

Due to his dissatisfaction with the shutters, Mr. Cangelosi initially withheld payment of the balance owed to New Orleans Hurricane under the language of the Sales Agreement. Following his August 4, 2011 telephone call, New Orleans Hurricane directed its lawyer, Lena R. Hinton, to demand payment of the balance of the Sales Agreement from Mr. Cangelosi and, in the event Mr. Cangelosi failed to pay, threatened to accuse Mr. Cangelosi of converting the FEMA grant monies to his personal use. Due to New Orleans Hurricane's importunate demands

and threats, Mr. Cangelosi prior to consulting Ms. Fleming's firm and under duress paid the $3750.00 balance that would have been due *only* upon the satisfactory completion of the shutter installation. After Mr. Cangelosi paid the balance owed under the Sale Agreement, he contacted his attorney. Mr. Cangelosi suffered mental anguish, humiliation, loss of enjoyment of life and loss of reputation as a result of the actions by New Orleans Hurricane and its agents.

**XI.**

Mr. Cangelosi asserts that threatening a criminal prosecution for the purpose of collection a civil debt violates both federal and state law including violating the Fair Debt Collection Practices Act and the Louisiana Unfair Trade Practices Act.

**XII.**

Moreover, because New Orleans Hurricane sought to collect the proceeds of federal grant monies, New Orleans Hurricane violated 18 U.S.C. Section 876 (Mailing Threatening Communications). 18 U.S.C. Section 876 States in pertinent part: "Whoever with the intent to extort from any persons any money or other thing of value, knowingly . . . causes to be delivered . . . any communication addressed to any other person and containing any threat to injure the property or reputation of the addressee . . . or any threat to accuse the addressee or any other person of a crime, shall be fined under this title or imprisoned not more than two years, or both."

## XIII.

Ms. Hinton who appears to be a Debt Collector as that term is defined under 15 U.S.C. Section 1692(a)(6) failed to insert the so called debt collection Miranda warning in her August 2, 2011 letter to Mr. Cangelosi.

## XIV.

Mr. Cangelosi avers on information and belief that numerous other individuals have received the same type of extortionate letter.  Moreover, the Greater New Orleans Better Business Bureau has received four (4) complaints from June 7, 2011 through January 6, 2012 for problems with products/service.  On information and belief, Mr. Cangelosi avers that these complainants have received a letter from New Orleans Hurricane's attorney similar to the one sent to him by Ms. Hinton.

## XV.

In August and September, 2011, Mr. Cangelosi reported New Orleans Hurricane's threats to the Federal Bureau of Information ("FBI") and the Office of the Orleans Parish District Attorney.

**WHEREFORE** Petitioner, Robert J. Cangelosi, Jr., prays that judgment be rendered in favor of him and against New Orleans Hurricane and Shutter and Window, L.L.C., for a full refund of the $7500.00 paid to New Orleans Hurricane, all items of damage in their full amounts, including all damages and penalties owed under the Fair Debt Collection Practices Act, the Louisiana Unfair Trade Practices Act, damages under La. Civ. Code art. 2315 for tortious conversion, defamation and for mental anguish in connection with same, together with interest,

court costs, expert costs, attorneys' fees and any other items of damages, together with interest thereon, and for all other appropriate legal and equitable relief.

                              **Respectfully submitted this 14 day of February, 2012**,
                 **By:**    **The Law Office of Sally Dunlap Fleming, P.L.C.**

                             *Sally D. Fleming*
                             _____
                             **SALLY D. FLEMING, Bar Roll No. 20814, T.A.**
                             **OWEN M. COURRÈGES, Bar Roll No. 31113**
                             **2100 Entergy Centre**
                             **1100 Poydras Street**
                             **New Orleans, LA 70163**
                             **Telephone: (504) 891-3090**
                             **Telecopier: (504) 895-5190**

                        **Attorneys for Robert J. Cangelosi, Jr.**

**Please serve:**

Dwight A. Walker,
Through its Agent for Service of Process,
New Orleans Hurricane Shutters and Windows, LLC
701 Poydras Street, Suite 107